First case for argument is Jones v. Calderon. Counsel? Jonathan Soglin on behalf of the appellant Eugene Jones. I'll reserve two minutes of my time. In the brief, I've argued that in this habeas case that the AEDPA deferential standard review should not apply. This morning what I'd like to do is explain why you don't need to address that complex question of the standard review. Because under any standard, whether you apply de novo review or the AEDPA deferential standard, reversal is required. This is a case in which the sole issue is essentially ineffective assistance of trial counsel in the plea negotiations. The state courts rejected this claim in different ways, the state trial court and the state court of appeal. I'll address the question of competence first. The state trial court and the state court of appeals both found that a factor that showed that there was no incompetence of counsel in this case was that when they came around to the 11-year plea offer, trial counsel gave the correct advice. That doesn't change the fact that earlier the district attorney had offered seven years. And at that time, counsel advised her client not to take that deal. And at that time, she did not understand that he was facing actually two strikes on his record as opposed to one strike. The fact that later, after she learned that he had more strikes, she gave him good advice to take 11 years, really does not address the fact that she gave him incompetent advice at an earlier stage when he could have taken that offer. The state court of appeals also put great weight on the fact that the advice that she originally gave to take the seven-year offer was based on what they described as three sources corroborating that there was only one strike, the rap sheet, the complaint, and the defendant himself. And as I put – There were two rap sheets. Which one did she have? There were two rap sheets in the record. Did she have both of them? That's not – I don't believe that's clear from the record. They're both – were attached to documents both in the – filed by the appellant in the district court. They were also attached to, I believe, pleadings filed during the new trial motion proceedings. It wasn't entirely clear which documents they were. One of them – Do you know the matters? I mean, is one more or less clear than the other? One of them is – shows that there was a – shows for the 1985 burglaries that one of them resulted in conviction, and the other one shows that perhaps it was dismissed for – in the interest of justice. There's a citation to Section 1385, which would be a dismissal by the judge in the interest of justice, which would have been an indication that it had been dismissed. But whatever version it was, there was additionally on it an assault noted for great – assault with deadly weapon, a citation to Section 245A1, was also on his rap sheet. A rap sheet showing an assault under 245A1 does not tell the attorney whether it's a strike or not. You cannot determine that without looking at the records. In fact, later, when we get to the information that's filed after the preliminary hearing, the DA actually alleges that 245A1, that assault, as a strike. Mr. Soldier, one of the things that worries me a little bit about it, that concerns me about this case, Suppose we issue the writ. What does that mean? That your client gets to go back and now enter a plea which I guess would be, what, not guilty or he gets to bargain with the district attorney's office? What does he get if we enter the writ? Well, it's – that's a question that the courts have struggled with, particularly the Riggs case that I cited, which is a district court case, very similar fact pattern. The courts struggle with that. In fact, there's an appeal pending addressing solely on the question of relief. I would say there's strong support in these situations that specific performance is what my client gets. But that would mean we would be stopping the district attorney's office from offering anything other than a seven-year deal or limiting it to a seven-year deal. And it didn't do anything wrong here as far as I can tell. Well, they – It limited the prosecution. Yeah. Well, the prosecution made that offer and to put the felon back in his shoes where he would have been, he would have to have the DA reoffer that. But then what? Then do you go to a judge? Because another issue here, first of all, Do you agree that the question of whether a judge would have accepted this is a question that is necessary to decide for the prejudice prong here? I do not agree that that's – Do you think that the inquiry under, what is it, Hill stops at whether he would have pled? That's correct. The question is would he have taken the deal, would he have accepted the offer, and then put him back there and see what – where the case goes. Judge Thompson's question, are we up to the point where you say, all right, you put him back where he was. The state's not penalized. They offered him the seven years. Now he takes the offer. Now you go to a judge. Is that as far as we are? And then the judge then decides whether to accept that plea or not? I think that's right. We don't know – he wasn't at the point when a judge had accepted it. Well, that's right. If we put him back where he was, we're putting him where he could accept the plea, and then they go to the judge. And that's as far as we go, right? I think that's correct. And then we don't know what happens. Then if a judge says no, well, that's somebody else's problem. Well, a lot of things have changed. For one thing, my client has already served more than seven years. He's already got credit for more than 11 years. If the three strikes initiative amendment passes tomorrow, everything changes. And if you put him back where he was, negotiations will be made with an understanding that he has no strikes. Well, you actually said you weren't sure about that. It didn't seem like it was a possibility. Let me clarify that. If the initiative passes, he will have no prior strikes. I understand. The question is whether it's fresh or active. But, hey, he goes back. I understand. If you send him back, he's operating in a universal way. But then what? Is the judge not supposed to put himself back to what would have been the case at the time as opposed to now? I mean, if we're giving specific performance, which is what you're asking for, I mean, then we're essentially putting ourselves back to 1995? Is that what it was? Well, the judge cannot sentence him under a law that's been repealed if that is, in fact, what happens or amended. You'd have to sentence it under the ‑‑ if he goes back in the posture of a defendant who has not yet been sentenced, he will be sentenced under the new law. But is the judge deciding whether ‑‑ Well, let's just assume we have the same rules we have now. Let's not assume the initiative is going to pass. So he goes to the ‑‑ they go back to the judge, and the judge, I guess, in theory, puts himself back to what he would have done. I don't even know whether the same judge is around. But he puts himself back into where he would have been had they come to him with the seven‑year deal, except that at that point he would have thought this is not a case where this would be the third strike. But this time he'll know it. Is he supposed to put it out of his mind? Well, it doesn't really affect us. That's the problem. There are many problems that would come if he won. That's correct. And that's something that the district court in the Riggs case struggled with and talked about in terms of different considerations. And in that case, the court formulated a relief where there wasn't specific performance, but they vacated the conviction, and he goes back and would be facing the charges anew and could bargain anew, could go to trial again. The problem with that is he's had one trial. It's not much of a remedy for him to go back and have another trial. The remedy really has to be to have him have that offer again. And it very well may be that there will be a judge, and the judge will accept that. The other problem, of course, is that we now know the answer to the undecided legal question that was undecided at the time that might have had something to do with why that seven years might have been accepted then. In other words, whether or not two strikes from two convictions and one judgment count as two strikes from one strike. Well, they certainly knew that by the time of his sentencing, but that was something that the government has put out. By the time of the actual sentencing, but they wouldn't have known by the time of the guilty plea if it had gone through. At the time of the offer, that was certainly an unanswered question by the courts. There were some hints about it looking at the statutes, and that you had the brought-and-tried language in Subdivision A of the statute, which existed prior to three-strikes law. That language is not put into the three-strikes law, and that told trial counsel, you can't count on the same rule applying from a different statute or subdivision. Just to go back to something before you sit down, you mentioned the 245A1 issue, and I didn't quite catch the details, I guess because you didn't say them. Why? My understanding was that 245A1 was dismissed on your defendant's motion early on, presumably because it was obvious that it wasn't a strike. So why might it have been a strike? A 245A1 is a statute that penalizes either assault with a deadly weapon or assault with force likely to cause great bodily injury. Sometimes it's a strike. Sometimes it's not. If it was with a deadly weapon, it was a strike. If you actually caused great bodily injury, it's a strike. But if you merely used force likely to cause great bodily injury, it's not a strike. When the rap sheet ---- On the facts that are alleged, is that it? Excuse me? So it depends on the alleged facts, and you couldn't tell it from the ---- You can't tell that from the rap sheet. The rap sheet simply says he had a conviction for 245A1. Counsel should have looked at that, seen that, and said, I need more records in this case. He may have more strikes. All right, thank you, counsel.  May it please the Court, Glenn Pruden, Deputy Attorney General, on behalf of Warden Calderon. The Court has asked some very interesting questions about possible remedies. However, I would submit to you that the Court need not trouble itself about possible remedies for Mr. Jones. Because he cannot establish prejudice, which would be necessary for him to prevail on his claim. I must say that I really find that your weakest argument. As I understand the record, the ---- quite aside from anything he said, and whether he was believed or wasn't believed, the lawyer testified that when he got the 11-year offer, he said he wanted the 7-year offer back and he would take it. And why isn't that evidence that he would take it? In other words, it wasn't simply an after-the-fact statement that he would have taken it. There's direct evidence that from the time period that he would have taken it. Certainly, Your Honor, he would want a 7-year offer when he is suddenly now confronted with a new situation where it is ---- Exactly, and that's the situation that he supposedly would have been in if the lawyer had been on top of things and had told him at the outset that he was facing a three-strike situation. But we also know, Your Honor, that there was a finding by the trial judge, which must be presumed correct, that no judge on the bench would have accepted that 7-year offer. It's Petitioner's burden to come forward under 2254e1 to rebut that with clear and convincing evidence. So this is a question I asked your colleague. Where in the case law, and am I right that the main case is Hill? Is that the name of the case, the Supreme Court case about guilty pleas? Hill v. Lockhart. Right. That doesn't seem to be concerned about that question. It seems to say the question was would he have taken the guilty plea. Is there any case law that says that you go to the next question whether the guilty plea would have been accepted? I can see the logic of it, but is there any case law supporting it? Well, Your Honor, the problem that we have is that the district attorney rather quickly after that initial offer. Well, what's the answer to my question? Is there any case law that indicates that if there is an ineffective assistance claim with regard to the plea, that the question, that what has to be proven goes beyond whether he would have accepted the plea and asked whether the plea would have been accepted by the judge. Is there any case law supporting that? There is no Supreme Court case that directly says that you have to look at whether or not the judge would have accepted the plea. Any Ninth Circuit case? I'm sorry, Your Honor. Any Ninth Circuit case? There is a central district case that I'm familiar with. That's the Riggs case. But the circuits themselves have split as to whether or not one has to look at whether or not the plea would have been accepted. And so, therefore, it becomes reasonable to look at that in the state court's analysis. And, again, we're here under AEDPA, Your Honor. Just to edify me because I don't know. Which circuits have held that you do? There are cases specifically on this question holding that you have to look at the question of whether the plea would have been accepted. Which cases are those? Your Honor, I do not know that one off the top of my head. They are laid out in the Riggs case by the judge. And the judge goes through the various splits as to whether or not you look at whether or not the plea would have been accepted as part of the prejudice analysis. How do you view this question on the ineffectiveness of counsel and the state court viewing the standard of review as abuse of discretion? And then I think Mr. Sodman argues it then looked to see whether it was arbitrary and capricious. Do we then give deference to that if the state court applied the wrong standard of review? The state court did review this case under Strickland because, Your Honor, if it was Yes, Your Honor. It is a merits determination that was rendered by the court of appeal. Does it matter what the court of appeals did? My understanding of this is that a state court has decided on the merits. And here the trial court definitely decided on the merits. That's correct, Your Honor. And then we have an exhaustion requirement and we have an abuse of discretion review. And even assuming we had an abuse of discretion review by the court of appeals, I'm not sure why that would matter. We have a state court that decided on the merits. That's correct, Your Honor. And that's another position that I would argue is that you do have the determination on the record by the trial court at the motion for new trial hearing. And also if you look carefully, Your Honor, at the opinion of the court of appeal, they say that whether this ruling is outside the bounds of reason under the applicable law, as well as under the relevant facts that are presented to it, that's how they determine whether or not there was an abuse of discretion. And that clearly indicates that they're looking at it through the lens of Strickland. The problem for Mr. Jones is that the DA, at any point up until a trial judge, theoretically would have accepted this seven-year plea agreement. And that's simply for the sake of argument because we stand by the state court findings that no judge on the San Francisco bench would have accepted that seven-year plea agreement. The DA was free to amend that information. And, in fact, that's exactly what happened. And Mr. Jones, when he had it explained to him that he was facing the 25-year sentence and had an opportunity then to take the 11-year deal based on the amendment of the information alleging the two strikes, he flat-out rejected that, Your Honor. And he offers what I would submit are a bunch of lame excuses. And he said he'd take the seven-year, which is all we're arguing. There's only issue here. The issue isn't here whether he would take them seven years. It's 11 years, whether he would have taken seven years. But the playing field was different. The DA at that point had realized that this was, in fact, a potential two-strike case and had charged it out as such. And you find the trial judge encouraging Mr. Jones very strongly prior to going to trial saying, are you sure you want to reject this deal? And Mr. Jones says, yes, no, I want to go to trial. And I would submit that that is a very strong indication. But he didn't have much confidence in his lawyer, and he had a pretty good reason to not have much confidence in his lawyer. Whether or not he has confidence in his lawyer, Your Honor, is not material to the issue of whether or not he can establish prejudice at this point in time. And the lawyer, Your Honor, was not the one advising him during that colloquy, strongly advising him that he needed to take that plea offer of 11 years. It was the trial judge. And I would submit that a defendant, even if the defendant has little faith in his or her lawyer, certainly has a great deal of faith and respect in a member of the bench. What is your view on the remedy? I think Mr. Soglin at one point said he'd go back and bargain anew. Let's suppose that was the remedy. Now you're back and you're bargaining again. What does the DA offer? And that's exactly the problem. Unless this Court wants to tie the DA's hands under what we know the law is. Well, if it's not a question of tying the DA's hands, it's holding the DA to the offer that would have been accepted. It's putting the person in the position he would have been in had he received effective advice from his counsel. That's only asking the DA to stick by what he did. But the DA, Your Honor, we don't know exactly how this thing would have played out, even if Mr. Jones had said, yes, I'll take the seven-year offer, because we don't know exactly when the DA realized his mistake in terms of charging. Well, we know pretty well. We know it was after November 1st and before November 15th. And we don't know whether or not Mr. Jones's plea would have been taken before then, and if the judge had rejected it, then we're again back. There was very specific testimony by the prosecutors, more specific than the defense counsel, that they made the offer around September 12th. So there was something like 45 days in which the offer could have been, the rap sheet could have been investigated and the plea could have been taken. Right? It wasn't a big hurry here. And in other words, they left it open until November 1. As of November 1, the prosecutors still didn't know the difference. And there was a 45-day period in which the defense counsel could have investigated the ‑‑ you're shaking your head. Did I have my facts wrong? No, no, no, Your Honor. No, I was just changing my position. Okay. So there was a 45-day period in which the defense counsel could have gotten the court records, which I gather from the record would have taken actually a couple days at most, less than that if she had just gone internally in her office. And accepted the plea before the government actually ever found out the difference. But there's also another factor, I believe, Your Honor, needs to look at, and that is once the initial offer was rejected, there's no sense of urgency on the district attorney to go back and reexamine this case and see whether or not it would be, in fact, charged out again as a two‑strike case. And the point I'm trying to make, Your Honor, is that the district attorney could have withdrawn that offer even after Mr. Jones had said, yes, we'll take it. Until a judge approves the offer, there's nothing to prevent the district attorney under California law from saying, nope, I made a mistake, I'm withdrawing that offer. Is that true? Even after it was accepted? I thought it was governed by basic contract law. No, Your Honor. Not until the deal is actually put in place. It obviously would hurt or has the potential to hurt a district attorney's credibility in dealing with defense attorneys. But until that deal is accepted, there's nothing binding the district attorney at that point other than their good word. I guess the DA, if they would then go forward, would say, well, here's a seven‑year deal that we made in the defense, accepted. Since that time, we found out this guy actually has other strikes, and therefore we urge that the court not approve it. Yes, Your Honor. I suppose that's what the DA would do. I would submit that that is a very realistic scenario if the court were to send it back and say, start over. And the court would leave the district attorney free to repudiate the deal that the court was ordering it to do. And the DA would then have the right to enforce. Maybe a court would be a little wiser than to allow a DA to do that. He lets them recite the facts as they are, and then the judge decides. Yes, Your Honor. I think the judge will throw it out. It obviously is a thorny situation if the court is inclined to grant a remedy. But, again, as I said at the very outset, our position is that there is no prejudice, particularly when you look at this through the double, as the Supreme Court has said, the doubly deferential lens of AEDPA on Strickland claims. And that's their term in Yarborough v. Gentry, which was decided last year. Thank you, counsel. Thank you, Your Honor. I just have one brief comment on this question of relief and remedy. The state has expressed concern about tying the hands of the DA. And I would just put out to the court that at this point, Mr. Jones, forgetting, putting aside anything that happens tomorrow in the election, he will still have had served actually over 12 years with credit in prison, which is more than the seven years that was originally offered, more than the 11 years that was offered the second time, 11 years which the trial judge was willing to approve. So in terms of relief, the DA's hands will not be terribly tied. They will have something that they had actually offered at one point. You'd be content with us saying we can put him back to accept the 11-year deal as far as you're concerned? That's okay? Well, I'm not sure of all the consequences of that. There are some collateral consequences of having the longer sentences on his record. The 11-year deal was made with knowledge of all the facts. That's correct. The seven-year deal was made under a mistake of fact by both sides. Correct. So it's not too hard to get back to say, well, if we put him back where he would have accepted, had there not have been any ineffective assistance, you can get him 11 years. I mean, it's a little harder in my view to get him back to a seven-year deal. But if it doesn't make any difference, well, that's another thing. Yeah. There are some collateral consequences of having the longer sentence. But primarily it is the prison term that he's concerned about, and that might be something that would be tremendous relief. So the seven would be better in any event? That's correct. But the 11 would be better than nothing. That's also correct. Thank you. Thank you, Counsel. Thank you both very much. The case just argued will be submitted. The next case on the calendar is Wong v.
judges: Reinhardt, Thompson, Berzon